FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 19 2015 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HECTOR DURAN,

                            Plaintiffs,

        - against -

CAMERON LINDSAY, Warden MDC Brooklyn;
MS. OWENS, Security Guard at MDC Brooklyn;
UNITED STATES and FEDERAL BUREAU
OF PRISONS,

                            Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

09-CV-5238 (SLT) (JMA)

**TOWNES, United States District Judge:**[1]

On June 10, 2009, plaintiff Hector Duran ("Plaintiff") commenced this suit against defendants United States of America; the Federal Bureau of Prisons ("BOP"); Cameron Lindsay, a former Warden of the Metropolitan Detention Center ("MDC"); and Ms. Owens, a Corrections Officer at MDC (collectively "Defendants"), alleging that he was subjected to "mental torture and physical abuse at MDC" and that Defendants were deliberately indifferent to his serious medical needs. (Complaint, p. 3). Defendants now move to dismiss the Complaint in part and for partial summary judgment, principally alleging that Plaintiff failed to exhaust his administrative remedies. For the reasons set forth below, Defendants' motion is granted and all claims, with the exception of certain tort claims against the United States, are dismissed.

## FACTS

The following facts are drawn from Plaintiff's June 10, 2009, complaint (the "Complaint"), the allegations of which are assumed to be true for purposes of this memorandum and order. Plaintiff Hector Duran arrived at the MDC, a facility operated by the BOP, on March

---

[1] The Court gratefully acknowledges the assistance of an intern, Kelly Landers Hawthorne of Columbia Law School, in the preparation of this memorandum and order.

18, 2008. (¶ 11.)² At the time, Plaintiff had a "number of chronic medical conditions," including "depression and anxiety problems," and had been recently diagnosed with a kidney stone. (¶¶ 11, 13, 15). Yet, MDC did not provide Plaintiff with appropriate medical treatments or medication, (¶ 34), such as "pain pills, depression pills and anxiety pill[s] ...." (¶ 17).

On May 29, 2008, there was a fight among inmates. (¶ 18.) Plaintiff was "interrogat[ed] in regards to the fight" and, while "being escorted back to his cell after [the] interview" in handcuffs, was subjected to "abuse" by Ms. Owens. (¶¶ 19, 20, 53). According to the Complaint, Ms. Owens "deliberately pulled [Plaintiff's] arm so hard by banging on [his] side" that it caused pain in his kidney. (¶ 21.) Plaintiff "raised his voice in distress," stating in a "remorseful manner," "I have medical condition, please don't treat me like an animal." (¶ 21). This comment made Ms. Owens "angry and more upset," and she "dragged" Plaintiff's hands higher, causing greater pain. (¶¶ 22, 54.) She subsequently told a lieutenant what Plaintiff had said, prompting the lieutenant to shout, "Put him in the SHU to suffer in pain." (¶¶ 23, 55.)

Plaintiff was "dragged ... violently" to the MDC's Special Housing Unit ("SHU"), where he remained until June 6, 2008. (¶ 24). Although he was in "unbearable pain" and "unable to move from his bed," his requests for medical treatment were ignored. (¶¶ 25-27.) Plaintiff had blood in both his urine and vomit, had difficult and painful bowel and bladder functions, and was coughing and shaking, but was "left in the cell to die." (¶¶ 35, 57.)

On June 6, 2008, Plaintiff was transferred to CI Moshannon Valley Correctional Center ("MVCC"). (¶ 32; Defs' Statement of Undisputed Facts ¶ 7.) There, a "scan ... or skin test" revealed that the kidney stone had become so large as to require emergency medical treatment. (First ¶ 38.) Although the "big stone" was successfully treated at the hospital, plaintiff asserts

---

² Numbers in parentheses preceded by "¶" denote paragraphs in the Complaint.

that he "develop[ed] unnecessary, uncontrollable pain" after the operation because of "unnecessary delay" in performing the surgery. (¶ 62.) Plaintiff claims that he continues to suffer "permanent uncontrollable excruciating pain in his private part" when "getting up from a seat and when sitting down." (¶¶ 61-62.)

Sometime prior to October 28, 2008, plaintiff filed an Administrative Tort Claim with the BOP. (¶ 63). The Complaint does not attach a copy of the Administrative Tort Claim itself, but attaches a copy of a memorandum issued by the BOP's Northeast Regional Office on April 23, 2009. That memorandum states, *inter alia*, that Plaintiff's Administrative Tort Claim, No. TRT-NER-2009-00573, was denied and that Plaintiff "may bring an action against the United States in an appropriate United States District Court within six (6) months ...."

Plaintiff filed his Complaint in the United States District Court for the District of Pennsylvania on June 10, 2009, while still incarcerated in the MVCC. Although the document attached to the Complaint pertains to Plaintiff's Administrative Tort Claim, the Complaint does not expressly seek relief under the Federal Tort Claims Act. Rather, each of the Complaint's four causes of action allege a violation of Plaintiff's due process rights, and three of the four specifically reference the Fourteenth Amendment. (¶¶ 65-68.) The first cause of action accuses all four Defendants of "deliberate indifference" to the "substantial risk of serious medical conditions[s]." (¶ 65.) The second charges Ms. Owens with using "excessive force" after being informed of these medical conditions. (¶ 66.) The third accuses "Defendants" of "neglect ... and indifference" to Ms. Owens' "assault, abuse, and use of force." (¶ 67.) The fourth accuses all four Defendants of "deliberate indifference ... to [P]laintiff's serious medical needs from the time [he] arrived at MDC Brooklyn to the date of his transfer[] to Moshannon Valley Correctional Center." (¶ 68.)

**The Instant Motion**

In late November 2009, the case was transferred from the United States District Court for the Western District of Pennsylvania to this Court. Defendants now move to dismiss the Complaint or, in the alternative, for summary judgment. Defendants construe Plaintiff's pleading as principally alleging *Bivens* claims against defendants Lindsay and Owens. However, Defendants also address the possibility that the Complaint may be attempting to raise *Bivens* claims against the individual defendants in their official capacities or against the United States or the BOP. In addition, Defendants recognize that Plaintiff may be advancing torts claims under the Federal Tort Claims Act.

With respect to the *Bivens* claims, Defendants move for summary judgment on the ground that Plaintiff has failed to exhaust his administrative remedies. In support of that argument, Defendants have provided a Declaration from Crista Colvin, a staff attorney at the MDC who is familiar with the BOP's Administrative Remedy Program and who has access to SENTRY, the computerized database in which the BOP records "information relating to formal administrative remedy requests filed by BOP inmates." (Colvin Declaration, ¶ 1.) Colvin states that the BOP's Administrative Remedy Program requires that an inmate first attempt to informally resolve his or her grievance with prison staff. (*Id.*, ¶ 4.) If dissatisfied with the staff response, the inmate must file a Request for Administrative Remedy on Form BP-9, then appeal to the BOP's Regional Director using Form BP-10 and to the BOP's General Counsel using Form BP-11. (*Id.*, ¶¶ 5-8.) According to Colvin, SENTRY records indicate that plaintiff filed a BP-10 on September 17, 2008, but never filed a BP-9 or BP-11. (*Id.*, ¶¶ 11-13.)

With respect to the tort claims, Defendants advance two arguments. First, relying on a Declaration of AUSA Nancy A. Miller, which attaches a copy of Administrative Tort Claim No.

TRT-NER-2009-00573, Defendants argue that the tort claim related solely to acts occurring on or after May 29, 2008, and that negligence claims preceding that date must be dismissed for lack of subject-matter jurisdiction. Second, the Government argues that the Federal Tort Claims Act only permits claims against the United States, and that tort claims against the other defendants must be dismissed for lack of subject-matter jurisdiction.

Following his receipt of Defendants' motion papers, Plaintiff, who was then living in the Dominican Republic, requested an extension of his time to file responsive papers. The Court granted that request, extending Plaintiff's time to respond to December 5, 2011, but Plaintiff never filed the responsive papers. In December 2014, after having received no communication from Plaintiff for three years, the Court directed the Government to file the motion papers, stating that if the Government had not yet been served with Plaintiff's response, the Court would treat Defendants' motion as unopposed.

## DISCUSSION

As a preliminary matter, the pleading does not allege a statutory basis for recovery. However, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999).

The Court agrees with Defendants' characterization of the Complaint as raising claims pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*[3] Since Plaintiff had been convicted prior to the incidents at issue herein, Defendants interpret the the *Bivens* claims as alleging that defendants Lindsay and Owens, acting in their individual capacity, violated Plaintiff's Eighth Amendment rights through use of excessive force and deliberate indifference to his serious medical needs. Defendants also characterize the allegations of excessive force and inadequate medical care as an attempt to assert tort claims under the Federal Tort Claims Act (the "FTCA").[4]

**The *Bivens* Claims**

Defendants assert that Plaintiff's *Bivens* claims against Warden Lindsay and Ms. Owens in their individual capacities should be dismissed for failure to exhaust the available administrative remedies as required by the Prisoner Litigations Reform Act ("PLRA"). The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they

---

[3] Defendants also address the possibility that the Complaint, which expressly states that it is suing defendants Lindsay and Owens in their official capacities (Complaint, ¶¶ 4-5), may be attempting to raise *Bivens* claims against the individual defendants in their official capacities or against the United States or the BOP. However, "*Bivens* relief is available only against federal officials who are personally liable for the alleged constitutional tort." *Turkmen v. Hasty*, 789 F3d 218, 233 (2d Cir. 2015). The Court sees no need to construe the *pro se* Complaint, which does not even mention *Bivens*, as raising claims which are not cognizable under the law.

[4] As noted above, none of the four causes of action mention the FTCA or even the word "tort." However, since the Complaint attaches a copy of a memorandum rejecting Plaintiff's Administrative Tort Claim, this interpretation is at least plausible.

allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance," *Woodford v. Ngo*, 548 U.S. 81, 95 (2006), any "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter*, 534 U.S. at 524).

There are four procedural steps through which inmates much proceed in order to exhaust their administrative remedies before they can file a *Bivens* claim:

> The first step is to submit a BP-8, or informal grievance, to prison staff. If the inmate is unable to resolve the complaint informally, the inmate must file an Administrative Remedy Request, or BP-9, with the Warden, who has 20 days to respond. The inmate may then appeal the Warden's decision to the Regional Director, who has 30 days to respond. If the inmate is still not satisfied, he may appeal that decision to the General Counsel, who has 40 days to respond. If an inmate does not receive a response or notice of extension within the allotted time, the inmate may consider the absence of a response to be a denial at that level.

*Baez v. Kahanowicz*, 469 F. Supp. 2d 171, 178 (S.D.N.Y. 2007), *aff'd*, 278 Fed. App'x 27 (2d Cir. 2008); *see* 28 C.F.R. § 542.18 (2006). "[I]nmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Rather, failure to exhaust is "an affirmative defense for which Defendants bear the burden of proof." *Garcia v. Heath*, No. 12 CV 4695 (CM), 2013 WL 3237445, at *4 (S.D.N.Y. Jun. 25, 2013) (citing *Jones*, 549 U.S. at 212). Accordingly, it is more appropriate in this case to proceed under a summary judgment standard, "giving the plaintiff an opportunity to rebut the claim of failure to exhaust in his opposition." *Williams v. Metro. Det. Ctr.*, 418 F. Supp. 2d 96, 101 (E.D.N.Y. 2005).

In a motion pursuant to Rule 56, summary judgment is appropriate only when "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 256 (1986). If the movant meets this burden, "the non-movant must set forth specific facts showing that there is a genuine issue for trial." *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citation omitted). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Id.* (internal quotations and citations omitted).

In this case, Defendants have adduced evidence that Plaintiff failed to exhaust his administrative remedies. Specifically, the Colvin Declaration states that, while Plaintiff filed a BP-10 on September 17, 2008, he failed to submit a either the BP-9 or the BP-11. Colvin Declaration, ¶¶ 11-13. Plaintiff, who never responded to Defendants' motion, has not adduced any proof rebutting this evidence of his failure to exhaust. Accordingly, Defendants' motion for summary judgment as to Plaintiff's *Bivens* claims against Warden Lindsay and Ms. Owens is granted.

**Federal Tort Claims Act**

Plaintiffs must also fully exhaust the available administrative remedies before bringing a claim under the FTCA. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993). "The exhaustion procedures under [the FTCA and the PLRA] differ, and the fulfillment of one does not constitute satisfaction of the other." *Owusu v. Fed. Bureau of Prisons*, No. 02 Civ. 915 (NRB), 2003 WL 68031, *2 (S.D.N.Y. Jan. 7, 2003). The FTCA requires, at minimum, that a claimant file an administrative claim with the appropriate federal agency and that the claims be denied. 28 U.S.C. § 2675(a); *see Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983).[5] Moreover, the administrative claim must provide that agency with enough information to permit

---

[5] 28 C.F.R. § 543.32(g) provides that claimants may also request that the BOP reconsider the denial of the claim.

—8—

it "to conduct an investigation and to estimate the claim's worth." *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998).

In this case, Plaintiff filed an administrative claim with the BOP on October 28, 2008. (¶ 63). Defendants have provided the Court with a copy of that claim, which seeks damages for personal injury resulting from Ms. Owens' use of force against Plaintiff on May 29, 2008, and for the improper medical care during the time Plaintiff was in the SHU. The claim was denied, and Plaintiff properly brought this action within six months of the mailing of the notice of final denial of the claim. *See* 28 U.S.C. § 2401(b).

As Defendants note, however, Plaintiff's administrative tort claim sought money damages only for the pain he allegedly suffered during the May 29, 2008, incident and for the subsequent failure to provide medical treatment. Because Plaintiff did not include in his tort claim any complaints about the time period between March 18 and May 29, 2008, he has not exhausted his administrative remedies for any torts which may have taken place during that time. *See Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004) ("Because it is undisputed that Adeleke did not file any administrative claim with respect to his seized personal property, he cannot sue for damages under the FTCA.") Accordingly, any potential tort claims premised on acts or omissions before the May 29, 2008, incident are dismissed for failure to exhaust.

Defendants also move for dismissal of any possible tort claims against defendants Warden Lindsay, Ms. Owens, and the BOP, because only the United States itself may be held liable for torts committed by their employees and agencies. *See, e.g., Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991) (an action under the FTCA "must be brought against the United States rather than an agency thereof"); *Coulthurst v. United States*, 214 F.3d 106, 108 (2d Cir. 2000) (noting that the FTCA "waives the sovereign immunity of the federal government for

claims based on the negligence of its employees"); *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994). Since the FTCA provides the exclusive remedy for non-constitutional tort claims for injuries resulting from the negligence of any United States government employees and agencies committed while acting within the scope of employment, 28 U.S.C. § 1346(b), any FTCA claims against Warden Lindsay, Ms. Owens, or the BOP are dismissed.

## CONCLUSION

For the above reasons, Defendants' motion to dismiss or, in the alternative, for summary judgment, is granted. The *Bivens* claims are dismissed, as are all the tort claims against defendants Lindsay, Owens, and the MDC. Only those tort claims against the United States arising from the May 29, 2008, incident and Plaintiff's subsequent medical treatment remain.

**SO ORDERED**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: August 12, 2015
Brooklyn, New York